UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
SHIMON WARONKER,

                         Plaintiff,                  **MEMORANDUM AND ORDER**
                                                         2:18-cv-393 (DRH)(SIL)

    - against –

HEMPSTEAD UNION FREE SCHOOL
DISTRICT, BOARD OF EDUCATION OF
THE HEMPSTEAD SCHOOL DISTRICT,
DAVID B. GATES, in his individual and
official capacity, RANDY STITH, in his
individual and official capacity, LAMONT E.
JACKSON, in his individual and official
capacity, PATRICIA WRIGHT, in her official
capacity as Clerk of the Hempstead School
District,

                         Defendants.
---------------------------------------------------------X

**APPEARANCES**

LAW OFFICES OF FREDERICK K. BREWINGTON
Attorneys for Plaintiff
556 Peninsula Boulevard
Hempstead, NY 11550
By:    Frederick K. Brewington, Esq.
          Cathryn Harris-Marchesi, Esq.
          Julissa M. Proano, Esq.

THE SCHER LAW FIRM, LLP
Attorney for Defendant
1 Old Country Rd., Suite 385
Carle Place, NY 11514
By:    Austin R. Graff, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Dr. Shimon Waronker ("Plaintiff") brought this action against Defendants Hempstead Union Free School District ("School District"), the Board Of Education of the Hempstead School District ("Board"), David B. Gates ("Gates"), in his individual and official capacity, Randy Stith, in his individual and official capacity, Lamont E. Jackson ("Jackson"), in his individual and official capacity, and Patricia Wright, in her official capacity as Clerk of the Hempstead School District (collectively, "Defendants") for violations of his rights under 42 U.S.C. § 1983, the First and Fourteenth Amendments of the U.S. Constitution, and state whistleblower protections, as well as breach of contract.

Presently before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim. For the reasons discussed below, the motion to dismiss is granted as to all claims. Additionally, the Court has considered Plaintiff's request to supplement his previously filed opposition to Defendants' Motion to Dismiss, and to amend the Complaint. As explained below, Plaintiff's request is denied.

## BACKGROUND

The following relevant facts come from the Amended Complaint and are assumed true for purposes of this motion.

The School District has had a fraught history of violence, gang activity, low graduation rates, inadequate resources, and dilapidated facilities. (Compl. [DE 1] ¶ 32.) Plaintiff has successfully "transformed" schools with academic, funding, and leadership challenges in the South Bronx, Brownsville, and East Flatbush. (*Id.* ¶ 14.) When the School District posted an

opening for a new superintendent in 2017, Plaintiff submitted an application. (*Id.* ¶ 15.) Plaintiff was scheduled for an in-person interview with the Board on April 4, 2017. (*Id.* ¶ 16.) Upon his arrival for the interview he was informed that a minority of the Board had put in a restraining order against the majority of the Board because of the location of the interview. (*Id.*) Thereafter, Plaintiff had two interviews with all five members of the Board. (*Id.* ¶¶ 17–18.) The Board expressed interest in hiring Plaintiff and began negotiating a contract. (*Id.* ¶ 19.) In negotiating the contract, Plaintiff "expressed the importance of having the ability as Superintendent of working with organizations that he ha[d] worked with or been affiliated with in the past when transforming schools." (*Id.* ¶ 20.) As such, Plaintiff's employment contract specifically provides that he had established professional or financial relationships with four delineated organizations, and that he while he may recommend that the District "enter into transactions" with these organizations he would not draw any compensation from these entities to eliminate possible conflicts of interest. (*Id.*) The four organizations were: (1) The Harvard Graduate School of Education; (2) The National Board for Professional Teaching Standards; (3) The New American Initiative; and (4) The New York City Leadership Academy. (*Id.*)

In 2017, after Plaintiff took the job as Superintendent for the District, he brought in special investigators and a forensic auditing firm to review the school's entrenched financial woes, as well as a deputy superintendent to deal with the violence plaguing the school. (*Id.* ¶ 120.) Plaintiff himself conducted a review of over 1,500 high school students' transcripts and discovered that 75% would not graduate and receive a high school diploma. (*Id.* ¶ 51.) Additionally, students in the ninth grade were taking eleventh grade history, and only 17% of students were passing the exam. (*Id.* ¶ 55.) Plaintiff also learned that students in the middle school were allowed to continue to the next grade even if they failed all of their classes. (*Id.*

¶ 53.) Plaintiff provides many other such examples of academic mismanagement in the Complaint. In addition to the academic review, Plaintiff also oversaw a facilities review in 2017. (*Id.* ¶ 71.) As part of this review, Plaintiff found that 1,600 students were studying "in crumbling and moldy trailers, some of which [were] 34 years old" and that the buildings had vermin infestations, decaying boilers, flooding, burst pipes, and graffiti. (*Id.*) An examination of the District's payroll revealed 295 distributions to 129 individuals who were not active employees of the District at the time of the payroll distribution, in addition to other financial mismanagement. (*Id.* ¶ 77.) Notably, "a great deal of the financial records were burned prior to [Plaintiff's] arrival" when the documents were due to be presented to the forensic auditors. (*Id.* ¶ 122.)

In June 2017, with the Board's approval, Plaintiff hired New American Initiative to help improve the school. (*Id.* ¶ 125.) Additionally, four Master teachers "were hired to help improve the pedagogy of the District." (*Id.* ¶ 125.) Also in June, Plaintiff terminated the Assistant Superintendent for Business & Operations due to his inability to disclose to Plaintiff the amount of money in the budget. (*Id.* ¶ 127.) Thereafter, Plaintiff terminated High School Principal Stephen Strachan for undisclosed "serious issues." (*Id.* ¶ 128.) During this time, an independent group named "Hempstead for Hempstead" founded by former Board member Thomas Parsley[1] began sowing opposition to Plaintiff. (*Id.* ¶ 130. Hempstead for Hempstead told Plaintiff when he terminated Principal Strachen that "there would be war." (*Id.* ¶ 129.)

In July 2017, Board Member Jackson was removed from the Board after a hearing. (*Id.* ¶ 131.) In August 2017, Plaintiff arranged a conflict mediation training for the Board and Cabinet-level officers; three of the Board members attended, but the other two refused to attend. (*Id.* ¶ 134.) When Plaintiff asked Board member Gates why he missed the training, Gates

---

[1] Mr. Parsley was allegedly removed from the Board after being convicted for Grand Larceny as well as a sexual offense. (Compl. ¶ 130.)

responded: "I don't trust you, you are my enemy." (*Id.* ¶ 135.) In September 2017, the Commissioner of Education appointed Dr. Jack Bierwirth as a "Distringuished Educator" to oversee the District. (*Id.* ¶ 142.) Only one other school district in New York State was subject to this type of oversight. (*Id.*)

On November 29, 2017, the Board called an emergency session and fired the Special Investigators looking into abuse, mismanagement, and possible corruption. (*Id.* ¶ 144.) In response, Plaintiff sent an e-mail to each of the Board members on December 6, 2017 (hereinafter "Board E-mail"), which stated in relevant part:

> I am advising the Board that after raising questions about suspected illegal financial activity to members of the District, no corrective action has taken place. As a fiduciary and as a guardian of the public trust I have been compelled to consult with several law enforcement agencies on the local, state, and federal level about disturbing facts which have become apparent to me, which I felt could not and should not be occurring. These matters are of a nature that endanger the public health, welfare, and safety of our district and appear to be both unlawful and unethical, and required disclosure to, and an evaluation by, governmental offices outside the confines of the Hempstead School District.
>
> The need to provide this information was mandated by two factors: first, the fact that instead of corrective action, I am seeing the opposite; and second, my professional, moral, and legal obligation to serve the District and those who are truly the consumers–our children–and the community at large.

(*Id.* ¶ 145.) The next day, in a meeting with the Board, Plaintiff recommended that the District tear down a building and issue a bond to rebuild a school on that site. (*Id.* ¶ 146.) The Board voted down the resolution 3 to 2. (*Id.*) On December 22, 2017, without any notice, the Board suspended Plaintiff's authority, fired the expert teachers Plaintiff had hired, and terminated the School District's contract with the New American Initiative. (*Id.* ¶¶ 147–48.)

On January 5, 2018, Plaintiff distributed an open letter to the community and posted the same on the District website. (*Id.* ¶150.) The letter, entitled "Collaborate and Elevate"

(hereinafter "Collaborate and Elevate Letter"), summarized the work that had been accomplished in the first six months, and went on to state:

> Collaborate with me to make Hempstead Schools thrive again. If we are honest, the need of working together on all these levels must be admitted as something that is obvious. Politics, self-interests, patronage, vendettas, threats, and cover-ups cannot rule the day. Our collective goal must be to elevate the standards for all involved in and attached to the Hempstead School District. The transformation which is necessary in Hempstead will not happen without hard work, transparency, honesty, and commitment to meaningful change.

(*Id.* ¶ 151.) The letter went on to ask every member of the community to help in this effort. (*Id.*)

On January 9, 2017, the Board voted 3 to 2 to place Plaintiff on "Administrative Leave of Absence with Pay, Effective Immediately." (*Id.* ¶ 152.) There was no hearing, and no charges were brought against Plaintiff. (*Id.* ¶ 153.) The same night, the Board adopted a modified Administrative Leave of Absence with Pay Policy, which it then used against Plaintiff. (*Id.* ¶ 154.) Also on January 9, 2018, the master teachers who the Board had fired decided to volunteer their time to complete an application for a $5.4 million grant for the District. (*Id.* ¶ 155.) In response, the Board issued a resolution directing the District's Superintendent to "prohibit the Master Teachers who were excessed on December 21, 2017, and are no longer employees of the District, effective December 22, 2017, from volunteering to provide services or rendering any services to the District." (*Id.* ¶ 156.)

Plaintiff brought the instant action by Order to Show Cause on January 19, 2018, seeking a temporary restraining order ("TRO") vacating the Board's January 9, 2018 resolutions and restoring Plaintiff to his position. (Proposed Order to Show Cause [DE 3] at 1.) The Court held an initial hearing that day, and then asked the Parties to brief the issue of subject matter jurisdiction. The Court held a further hearing on January 30, 2018, and denied the TRO as

Plaintiff had failed to state a claim upon which relief could be granted. Defendants filed the fully briefed motion to dismiss on April 16, 2018.

## DISCUSSION

### I. *Plaintiffs' Claims*

In the Complaint, Plaintiff sets forth five causes of action: (1) a Monell claim for municipal liability for violations of Plaintiff's Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 ("§ 1983"); (2) violations of Plaintiff's due process rights pursuant to the Fourteenth Amendment; (3) violations of Plaintiff's First Amendment rights; (4) violations of state law whistleblower protections; and (5) breach of Plaintiff's employment contract.

### II. *The Motion to Dismiss Pursuant to Rule 12(b)(6) is Granted*

    A. Rule 12(b)(6) Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at

679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

> B. The Motion to Dismiss is Granted as to Claims One and Two: Procedural Due Process Claim
>
>> 1. Applicable Law

To state a claim for a procedural due process violation a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted).

Applying this test to the facts at bar, the Court must first consider whether Plaintiff had a property right. Here, Plaintiff claims that as a public employee he had "a constitutionally

protected property interest in his tenure" that could not be terminated without due process. (Compl. ¶ 162.) This argument is unavailing. While the due process clause secures private interests against public deprivation, "governmental powers are not themselves private property [as] [t]hey do not exist independently of the government and are not secured against governmental interference." *Batagiannis v. West Lafayette Community School Corp.*, 454 F. 3d 738, 741–42 (7th Cir. 2006). As the Seventh Circuit has noted, "[e]very appellate decision that has addressed the subject accordingly has held that a contractual right to be a superintendent of schools creates a property interest in the salary of that office but not the ability to make decisions on behalf of the public. *Id.* (*citing Royster v. Bd. of Trustees*, 774 F.2d 618 (4th Cir. 1985); *Kinsey v. Salado Independent School Dist*, 950 F.2d 988 (5th Cir. 1992); *Holloway v. Reeves*, 277 F.3d 1035 (8th Cir. 2002); *Harris v. Bd. of Educ.*, 105 F.3d 591, 596–97 (11th Cir. 1997) (dictum; appeal was resolved on immunity grounds)). While the Second Circuit has not specifically considered this question, other district courts in this Circuit have held that no liberty or property interest was infringed when a superintendent was suspended with pay and lost only "the ability to fulfill the function of superintendent[.]" *See Watkins v. McConologue*, 820 F. Supp. 70, 72 (S.D.N.Y. 1992). Moreover, it is well-established precedent in this Circuit that an employee who continues to be paid "cannot sustain a claim for deprivation of property without due process even if relieved from job duties." *See Ingber v. New York City Dep't of Educ.*, No. 14-CV-3942, 2014 WL 6888777, at *2 (S.D.N.Y. Dec. 8, 2014).

In addition to his standard procedural due process claim, Plaintiff also asserts a "stigma plus" claim for an infringement of his liberty interest. A liberty interest is a "broad notion" that encompasses the freedom "to engage in any of the common occupations of life." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996). "Special aggravating

circumstances are needed to implicate a liberty interest[,]" such as when the state fires an employee and publicly charges that she or he acted dishonestly or immorally. *Id.* In *Patterson v. City of Utica*, the Second Circuit established a stigma plus claim that can invoke the Due Process Clause when the "[l]oss of one's reputation . . . is coupled with the deprivation of a more tangible interest, such as government employment." 370 F.3d 322, 330 (2d Cir. 2004) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972)). For a government employee, a stigma plus claim "may arise when an alleged government defamation occurs in the course of dismissal from government employment." *Id.* The Second Circuit later explained that a stigma plus claim requires stigmatizing false statements that are publicized. *O'Connor v. Pierson*, 426 F.3d 187, 195–96 (2d Cir. 2005) (finding that plaintiff had alleged "the plus without the stigma, and [rejecting the argument] that the plus alone has created the stigma" because negative inferences by the community based on a suspension were not enough to make out a stigma-plus claim). "Courts have consistently held that statements announcing personnel decisions, even when leaked to the press, and even when a reader might infer something unfavorable about the employee, are not actionable." *Weise v. Kelley*, 2009 WL 2902513, at *4 (S.D.N.Y. Sept. 10, 2009). Moreover, "true public statements that a party is under investigation" are not stigmatizing for purposes of a stigma-plus claim. *Id.*

        2. The Motion to Dismiss is Granted as to Claims One and Two

With regards to Plaintiff's procedural due process claim, Plaintiff was suspended with pay so the question of whether he had a property interest in his position as a superintendent is effectively academic. Plaintiff cannot sustain a due process claim in light of the undisputed fact that he was suspended *with pay*. However, even if Plaintiff had been terminated or suspended

without pay, the Court is persuaded by the consensus in other Circuits and district courts in this Circuit that superintendents have no property right in their position.

Plaintiff argues that in determining whether he has a property interest in his position for purposes of procedural due process, the Court should look to whether his interest would be protected under state law. (Mem. in Opp. at 10 (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 212 (2d Cir. 2003)). Plaintiff then attempts to manufacture a property interest by connecting the provision in N.Y. Educ. Law § 1711(3) that "a board of education may enter into a contract with [a] superintendent. . . upon such terms as shall be mutually acceptable to the parties, including but not limited to fringe benefits and procedures for termination by either party[,]" with the language in his contract that provides that he cannot be suspended or terminated without just cause and a hearing before an impartial hearing officer. (*See* Mem. in Opp. at 10–11.) The Court is not swayed by this argument as "[n]ot every contractual benefit rises to the level of a constitutionally protected property interest." *Harhay*, 323 F.3d at 212 (citing *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775, 782 (2d Cir. 2003)). More fatally still, Plaintiff's reasoning fails to address the profound constitutional issues with establishing a property interest in "the ability to make decisions on behalf of the public." *See Batagiannis*, 454 F. 3d at 741–42. Accordingly, the Court finds that Plaintiff did not have a property interest in the superintendent position as distinct from his superintendent salary.

Alternatively, Plaintiff sets forth a stigma-plus claim that his liberty interest was infringed upon by his suspension. A stigma-plus claim requires false, stigmatizing statements. Here, the Complaint does not set forth any such allegations. Even if Defendants made statements that they were investigating Plaintiff, these statements are true and therefore do not

meet the requirement of a "false, stigmatizing claim." *See Weise*, 2009 WL 2902513, at *4. Since the suspension alone cannot give rise to a stigma-plus claim, this claim must be dismissed.

As Plaintiff did not have a property interest in his superintendent position or a liberty interest that was violated by his suspension, the Court will not proceed to consider the other elements of a procedural due process violation. Defendants' motion to dismiss is granted as to Plaintiff's first and second claims.

    C. The Motion to Dismiss is Granted as to Claim Three: First Amendment

        1. Applicable Law

To prevail on a First Amendment retaliation claim, a plaintiff must prove "(1) [his or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [him or her]; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

"When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). However, there are times when a public employee's speech falls within the ambit of the First Amendment. To determine whether a public employee's speech is protected, courts conduct a two-step inquiry. *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). First, the court "determin[es] whether the employee spoke as a citizen on a matter of public concern. *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). An employee speaks as a citizen if the speech fell outside of the employee's official responsibilities, and a civilian analogue existed. *Matthews*, 779 F.3d at 172 (citing *Weintraub v. Bd. of Educ.*, 593 F.3d 196,

203–04 (2d Cir. 2010)). This is a conjunctive test. "If an employee did not speak as a citizen on a matter of public concern, the inquiry ends—the speech was not constitutionally protected." *Alvarez v. Staple*, 2018 WL 5312901, at *7 (S.D.N.Y. Oct. 26, 2018).

### 2. The Motion to Dismiss is Granted as to Claim Three

Plaintiff claims that Defendants retaliated against him when he exercised his right to free speech by sending the aforementioned Board E-mail and Collaborate and Elevate Letter to the community. Here, Plaintiff is a public employee so the Court must evaluate whether he spoke as a citizen on a matter of public concern. Based on the *Matthews* test, the Court finds that Plaintiff did not speak as a citizen. As set forth in the Complaint, the Board e-mail: (1) was sent by Plaintiff in his capacity as Superintendent; (2) was signed by Plaintiff using his Superintendent title; (3) explicitly discussed his role and duties ("since my arrival here in Hempstead, my primary focus has been to raise the bar for us in the District in terms of our effective delivery of services for our children") in the context of the letter's subject matter; and (4) was sent solely to the Board as a means of providing counsel based on Plaintiff's experience and position as Superintendent. (*See* Compl. ¶ 145.) Likewise, the Collaborate and Elevate Letter was posted on the District website by Plaintiff in his capacity as superintendent. (*Id.* ¶ 151.) To wit, the Complaint states that Plaintiff posted the Collaborate and Elevate Letter "as part of [his] pledge to be transparent and keep the Community involved[.]" (Compl. ¶ 150.) The Complaint does not provide the full letter, so the Court does not know whether Plaintiff signed the letter using his title or further discussing his role. However, this is inconsequential because there is no civilian analogue to the Superintendent posting a letter directly on the District website. Thus, Plaintiff sent the Board E-mail and Collaborate and Elevate Letter as a public employee pursuant to his official duties.

In sum, Plaintiff was hired to transform the District into an appropriately functioning educational institution. (*See* Compl. ¶ 14 ("[Plaintiff's] past successful transformative efforts in schools located in the South Bronx, Brownsville, and East Flatbush would enable him to do what was necessary for the Hempstead School District").) In an effort to accomplish that core mission, he contacted members of law enforcement concerning perceived ongoing financial malfeasance within the District and, as the District's Superintendent, informed Board members of his actions in the Board E-mail. (*Id.* ¶ 145.) Similarly, in the Collaborate and Elevate Letter, Plaintiff, as the Superintendent, sought the assistance of the community to "[c]ollaborate with [him] to make Hempstead Schools thrive again." (*Id.* ¶ 151.) In each instance, he spoke as an employee for First Amendment purposes. Accordingly, the Court need not proceed further with this inquiry and Defendants' motion to dismiss is granted as to Plaintiff's third claim.

> D. The Motion to Dismiss is Granted as to Claim Four: N.Y. Civ. Serv. Law § 75-B; N.Y. Lab. Law §§ 215, 740; and N.Y. Ed. Law § 3028-D

Plaintiff asserts a retaliation claim under New York law, however this claim is barred for failure to file a written verified claim with the School District and/or the Board three months after the accrual of such claim and before filing the instant action. *See* N.Y. Educ. Law § 3813(1). Plaintiff argues that there is no prejudice to Defendants as a result of his failing to give the proper notice, and that the "absence of an acceptable excuse [for this oversight] is not necessarily fatal to the application." (Mem. in Opp. at 28 (citing *Lewin v. County of Suffolk*, 239 A.D.2d 345, 246 (2nd Dep't 1997)). The Court finds that, on the contrary, Plaintiff's failure to comply with the explicit directives of N.Y. Educ. Law § 3813(1) is fatal because it prevented Defendants from having an opportunity to investigate and cure their alleged violation. *See Chem. Const. Corp. v. Board of Ed. of City of New York*, 430 N.Y.S.2d 771, 772 (N.Y. Sup. Ct. 1980) ("section 3813 is clearly intended to afford a school district the opportunity to investigate

the claims of all kinds to obtain the evidence promptly while it is still readily available, and to adjust or make payments before litigation is commenced" (internal quotations and citations omitted)). This is especially true in light of the circumstances of this case; namely that Plaintiff was suspended *with pay*, and he was therefore in a position to be able to follow the proper procedures. Moreover, Plaintiff commenced this matter by way of a request for an Order to Show Cause hearing for a Temporary Restraining Order. In other words, he sought immediate injunctive relief to alter the status quo before Defendants even had a chance to answer the Complaint. In so doing, he usurped Defendants' statutorily-provided opportunity to investigate and cure the alleged violation. Plaintiff points to two exceptions § 3813(1)'s requirements, namely: (1) if the proceeding is a matter of public interest; and (2) if another statute or contract either provides similar notice to the school *or* if the school contracted away its right to notice. (Mem. in Supp. at 30 (citing *Matter of Grey v. Board of Educ. Of Hudson Falls Cent. School Dist.*, 60 A.D.2d 361, 363 (1978)). Neither exception is applicable here. This is a case for Plaintiff to recover his Superintendent position, and while he may believe that is in the public interest, that is not the meaning of a proceeding that is a matter of public interest. "Although all actions brought to enforce civil rights can be said to be in the public interest, only actions that seek relief for a similarly situated class of the public are entitled to relief from the notice of claim requirement." *Augustin v. Enlarged City School Dist. Of Newburgh*, 616 F. Supp. 2d 422, 446 (S.D.N.Y. 2009) (citing *Bloom v. N.Y. City Bd. of Educ.*, 2003 WL 1740528, at *4 (S.D.N.Y. Apr. 2, 2003)) (internal quotation marks and citations omitted). A claim can be characterized as enforcement of a private right—as opposed to a matter of public interest—where the "allegations of discriminatory conduct on the part of the School District refer only to conduct as it relates to [the plaintiff]." *Id.* Here, Plaintiff seeks enforcement of a private right, as he seeks relief on the

basis that he alone was denied his position as Superintendent in retaliation for exercising his right to free speech. Thus, Plaintiff's claim does not fall within the public interest exception to the § 3813(1) requirements.

Finally, Plaintiff has not pointed to any other statute or provision in his contract that replaced the notice requirement of § 3813(1). As such, Defendants' motion to dismiss is granted as to Plaintiff's fourth claim.

### E. The Motion to Dismiss is Granted as to Claim Five: Breach of Contract

Plaintiff's final claim is for breach of his employment contract. As with his retaliation claim, this claim is likewise barred for failure to file a written verified claim with the School District and/or the Board three months after the accrual of such claim and before filing the instant action. *See* N.Y. Educ. Law § 3813(1). Accordingly, Defendants' motion is granted as to Plaintiff's fifth claim, and the entire matter is hereby dismissed.

As a final matter, the Court notes that even if Plaintiff had met his obligation under N.Y. Educ. Law § 3813(1), "[i]t would [] be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction." *See, e.g., Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (affirming a district court decision to dismiss state claims after dismissing all federal claims related to a student's individualized education plan under the Individuals with Disabilities Education Act). A District Court may, in its discretion, retain jurisdiction in certain circumstances over state claims even after dismissing all federal claims. The Court declines to do so here. "[I]f federal law claims are dismissed before trial . . . the state law claims should be dismissed as well" unless federal policy concerns "argue in favor of exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed." *Kolari v. New York-Presbyterian Hosp.*, 455

basis that he alone was denied his position as Superintendent in retaliation for exercising his right to free speech. Thus, Plaintiff's claim does not fall within the public interest exception to the § 3813(1) requirements.

Finally, Plaintiff has not pointed to any other statute or provision in his contract that replaced the notice requirement of § 3813(1). As such, Defendants' motion to dismiss is granted as to Plaintiff's fourth claim.

### E. The Motion to Dismiss is Granted as to Claim Five: Breach of Contract

Plaintiff's final claim is for breach of his employment contract. As with his retaliation claim, this claim is likewise barred for failure to file a written verified claim with the School District and/or the Board three months after the accrual of such claim and before filing the instant action. *See* N.Y. Educ. Law § 3813(1). Accordingly, Defendants' motion is granted as to Plaintiff's fifth claim, and the entire matter is hereby dismissed.

As a final matter, the Court notes that even if Plaintiff had met his obligation under N.Y. Educ. Law § 3813(1), "[i]t would [] be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction." *See, e.g., Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (affirming a district court decision to dismiss state claims after dismissing all federal claims related to a student's individualized education plan under the Individuals with Disabilities Education Act). A District Court may, in its discretion, retain jurisdiction in certain circumstances over state claims even after dismissing all federal claims. The Court declines to do so here. "[I]f federal law claims are dismissed before trial . . . the state law claims should be dismissed as well" unless federal policy concerns "argue in favor of exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed." *Kolari v. New York-Presbyterian Hosp.*, 455

F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)). Here, the crux of this matter concerns issues of New York state law. There are no commingled questions of federal law or overriding federal policy concerns that remain. Therefore, this matter should be "re-filed in state court where [the Parties] will be afforded a 'surer-footed reading of applicable law." *Id.*

> III. *The Motion to Dismiss Pursuant to Rule 12(b)(1)*

The Court need not consider whether it has jurisdiction over this matter as it has already dismissed all claims pursuant to Rule 12(b)(6).

> IV. *Plaintiff's Request for Leave to Supplement/Amend*

On December 28, 2018, Plaintiff asked the Court for leave to supplement his previously filed opposition to Defendants' Motion to dismiss, as well as to amend the Complaint. Plaintiff asserts that this is necessary because he filed the Complaint and his opposition before receiving 41 "Specifications and Charges" brought against him by Defendants in August 2018. Plaintiff also avers that Defendants' delay in selecting a Hearing Officer has some impact on this matter. While the Court is sympathetic to Plaintiff's frustrations, his request is denied because there is no information related to the delay or the charges that will alter the Court's decision. With or without the delay and the charges, Plaintiff was still suspended with pay, he still likely has no property interest in his superintendent position, and he will still fail to meet the *Matthews* test for a First Amendment claim. The significance of the delay and charges to Plaintiff's state claims, if any, is irrelevant because the Court has declined to exercise jurisdiction over those claims.

## CONCLUSION

Notwithstanding the deeply troubling allegations brought against the School District and the Board, both with regards to their conduct toward Plaintiff as well as the long history of

apparent corruption and neglect in the discharge of their duties, this is a Court of limited jurisdiction and Plaintiff has not set forth any actionable federal claims. Accordingly, Defendants' motion to dismiss is granted in toto. The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
January 16, 2019

/s/
Denis R. Hurley
Unites States District Judge